Filed 4/15/21  P. v. Miller CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>HERBERT CHARLES MILLER,<br><br>Defendant and Appellant. | B300200<br><br>Los Angeles County<br>Super. Ct. No. TA112805-03 |

APPEAL from an order of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Joanna McKim, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and David A. Voet, Deputy Attorneys General, for Plaintiff and Respondent.

Herbert Charles Miller appeals from the superior court's order denying his petition under Penal Code section 1170.95.[1] That statute allows certain defendants convicted of murder under the felony-murder rule or the natural and probable consequences doctrine to petition the court to vacate their convictions and for resentencing. Here, the trial court properly determined Miller is not eligible for resentencing as a matter of law because the jury found true a multiple-murder special circumstance allegation within the meaning of section 190.2, subdivision (a)(3). That finding means the jury found Miller—even if not the actual shooter of either victim—acted with the intent to kill. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Around 8:15 p.m. on November 9, 2005, Nakia Wheeler pulled his SUV into his driveway in Compton.[2] Wheeler was known to be a marijuana dealer. Wheeler's friend Michael Leggette was there that night, either in Wheeler's SUV with him or waiting for him in front of his house. (*Miller I.*)

One of Wheeler's neighbors saw "silhouettes" on his driveway and heard four or five people—including Wheeler—arguing in " 'an angry confrontation.' " Neighbors then heard gunshots from what sounded like two weapons; witnesses saw two people outside a dark car firing weapons. Witnesses had seen the same car—a black Pontiac Grand Am with tinted

---

[1]     References to statutes are to the Penal Code.

[2]     We summarize the facts from our 2014 opinion affirming Miller's conviction, *People v. Miller et al.* (Feb. 7, 2014, B232167) [nonpub. opn.] (*Miller I*). We previously granted Miller's request, filed concurrently with his opening brief, that we take judicial notice of "[t]he record in appellant's first appeal, . . . including the clerk[']s and reporter's transcripts, the Court of Appeal's opinion and appellant's briefs."

2

rear windows—drive down the street earlier that evening. When the Grand Am passed by earlier, a man in the passenger seat asked some teenage boys who were standing on the street if they were affiliated with a tagging crew.  The boys said no, and someone in the car shouted, "this is Nutty Blocc Compton Crip" or "Nutty Blocc."  (*Miller I*.)

Leggette was found lying unconscious on the front lawn of a nearby home.  He died from a gunshot wound to his back. Wheeler was found face down on the ground in a nearby backyard.  He had been shot in the back, arm, and elbow. He also died from his wounds.  Even though Wheeler's SUV "reeked of marijuana," authorities found "no sizable amount" of the drug in the SUV.  Wheeler's pants contained only $11, and a single $5 bill was found on his front lawn.  (*Miller I*.)

Within minutes of the shooting, a neighbor who was one of Wheeler's regular customers saw two men she knew— Javone Brown and Jeffrey McLeod—run past her along with a third man she didn't know.  The next morning she heard Brown and McLeod laughing and bragging to members of the Nutty Blocc Crip gang that they had " 'hit a lick' "; she told police Brown and McLeod said they got a lot of money by robbing Wheeler.  (*Miller I*.)

The Nutty Blocc Crips is one of the oldest gangs in Compton.  Miller, Brown, and McLeod all belong to the gang. (*Miller I*.)

A Nutty Blocc member identified as "D.H." had been McLeod's friend for years; he also knew Miller.  The morning after the killings, McLeod told D.H. that he, Miller, and Brown had robbed and killed Wheeler.  Before the killings, D.H. had seen Miller with a black AK-47 rifle.  D.H. had once borrowed the gun from Miller.  Miller described the model as a " '30-30.' " (*Miller I*.)

3

Miller owned a black Pontiac Grand Am with tinted rear windows. "No one else in the neighborhood owned a car that looked like his car." Three days after the killings Miller had the car painted gold. (*Miller I*.)

A day or two after the killings, Miller told a 14-year-old neighbor whom he had forced to have sex with him to tell Wheeler's mother that she'd seen " 'some Mexicans rob and shoot' " her son, but the girl refused. (*Miller I*.)

Several years later, when D.H. was transported from jail to the courthouse to testify at Miller's preliminary hearing, Miller—who was on the same bus—spat on D.H. and told him not to testify because " 'you know what happens to snitches.' " (*Miller I*.) Miller also wrote letters to Brown's girlfriend "urging her not to take the oath" and instructing her "on how to testify." (*Ibid*.)

The People charged Miller, Brown, and McLeod with the murders of Wheeler and Leggette. The People alleged the offenses were "a special circumstance within the meaning of Penal Code Section 190.2(a)(3)," multiple murder. The People also alleged the defendants committed the crimes for the benefit of, at the direction of, and in association with a criminal street gang and that a principal used and discharged a firearm causing death to the victims. The People alleged Miller had two prior strikes for attempted robbery and assault with a deadly weapon.

The case went to trial in 2010. As we said in *Miller I*, "[t]he evidence tended to show Brown and McLeod had been the gunmen," and "Miller had been driving the car." Ballistics evidence showed two guns had been fired at the scene: a .45 caliber semiautomatic handgun and a semiautomatic rifle. Five spent .45 caliber cartridge cases were found outside Wheeler's home and two spent 7.62 by 39 millimeter rifle cartridge cases

4

were found in the street.  A Ruger Mini 30 rifle is one of the weapons that typically fires a 7.62 by 39 millimeter bullet.  (*Ibid*.)

The jury convicted Miller and his co-defendants of the first degree murders of Wheeler and Leggette and found the special circumstance, gang, and firearm allegations true. The trial court sentenced Miller to two terms of life without the possibility of parole, plus two terms of 25 years to life for the firearm enhancements, to be served concurrently.  (See *Miller I*.)

As noted, we affirmed Miller's conviction.  We held substantial evidence supported the defendants' convictions for first degree murder as well as the multiple murder special circumstance finding as to Miller.[3]  (*Miller I*.)  We noted section 190.2, subdivision (c), "requires that an aider and abettor who is not the actual killer must have acted with the intent to kill. (*People v. Souza* (2012) 54 Cal.4th 90, 110, fn. 6 [for an aider and abettor who did not actually kill the victims, multiple murder special circumstance requires an additional finding of intent to kill].)"  (*Miller I*.)  Rejecting Miller's contention that " 'the jury necessarily based its verdict on a felony-murder aiding and abetting theory, the murders [having] occurred during a robbery,' " we concluded:

> "[T]here was sufficient evidence to sustain Miller's conviction for premeditated and deliberate murder.  The trial court instructed the jurors they could find the multiple-murder special circumstance allegation true, as to a defendant who did not actually kill either

---

[3]     It does not appear Brown or McLeod challenged the sufficiency of the evidence on the multiple murder special circumstance on appeal.  (*Miller I* [Miller contends finding must be reversed].)

victim, only if they found the defendant acted with intent to kill. Miller does not challenge the correctness of the trial court's instructions. Since the properly instructed jury found his multiple murder special circumstance allegation true, it must have concluded Miller was guilty of a premeditated and deliberate killing rather than just an accidental killing." (*Ibid*.)

After Senate Bill No. 1437 (2017-2018 Reg. Sess.) (SB 1437) took effect, Miller's trial counsel, on April 22, 2019, filed on his behalf a pleading entitled "Petition for Resentencing (P.C. 1170.95)." The petition essentially recited the language of the statute, including a statement, "The defendant did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree." Counsel also stated, "I have received a written request from the defendant, asking that this court appoint me to represent Mr. Miller during this re-sentencing process."

Miller did not sign or verify the petition. (See § 1170.95, subd. (b)(1)(A) ["The petition shall include all of the following: (A) A declaration by the petitioner that he or she is eligible for relief under this section, based on all the requirements of subdivision (a)."].) Instead, counsel stated, "I declare under penalty of perjury that the above is true except as to that stated on information or belief or that which is legal conclusion and as to those, I believe them to be true." The petition had no attachments or exhibits.

The trial court did not appoint counsel for Miller. On June 26, 2019, the court issued a minute order denying Miller's petition. The court stated,

6

"The jury not only found the petitioner guilty of first degree murder but also found true, the special circumstance under 190.2(a)(3), multiple murder special-circumstance. The jury was instructed that they could find the multiple-murder special circumstance allegation true, as to the defendant who did not actually kill either victim, only if they found the defendant acted with the intent to kill. (See CALCRIM No. 702.) In fact, by finding the allegation to be true, the jury had to have found that petitioner, even if not the actual killer, acted with the intent to kill. [¶] Therefore, due to the jury's findings as stated and pursuant to Penal Code section 189(e)(3), the petitioner does not qualify for resentencing to Penal Code section 1170.95."

## DISCUSSION

SB 1437 took effect on January 1, 2019. (See Stats. 2018, ch. 1015, § 4.) The purpose of the new legislation was "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, *did not act with the intent to kill*, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f), italics added; see *People v. Larios* (2019) 42 Cal.App.5th 956, 964, review granted Feb. 26, 2020, S259983.) To accomplish this purpose, SB 1437 amended section 188 to provide "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (Stats. 2018, ch. 1015, § 2; § 188, subd. (a)(3).) SB 1437 also added section 189, subdivision (e),

7

which provides that a person is liable for murder "only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (Stats. 2018, ch. 1015, § 3; see *Larios*, at p. 964.)

Evaluation of a section 1170.95 petition requires a multi-step process:  an initial review to determine the petition's facial sufficiency; a prebriefing, " 'first prima facie review' " to determine preliminarily whether the petitioner is statutorily eligible for relief as a matter of law; and a second, postbriefing prima facie review to determine whether the petitioner has made a prima facie case that he is entitled to relief. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 897, review granted Aug. 12, 2020, S263219; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 327-330 (*Verdugo*), review granted Mar. 18, 2020, S260493; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1165-1166.)  If the petitioner makes such a showing, the court must issue an order to show cause and conduct a hearing to determine whether to vacate the murder conviction and resentence the petitioner on any remaining counts.  (§ 1170.95, subds. (c), (d); *Nguyen*, at pp. 1165-1166.)

A number of appellate courts have held a court considering a resentencing petition properly may "examine readily available portions of the record of conviction to determine whether a prima facie showing has been made that the petitioner falls within the provisions of section 1170.95." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 323; *see also People v. Lewis* (2020) 43 Cal.App.5th 1128, 1137-1139 (*Lewis*) [record of conviction includes court of appeal's

8

opinion on direct appeal], review granted Mar. 18, 2020, S260598; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [jury instructions are part of record of conviction], review granted Sept. 23, 2020, S263939.) The issue is currently before our Supreme Court, which has granted review in *Lewis*. One issue the high court has designated is: "May superior courts consider the record of conviction in determining whether a defendant has made a prima facie showing of eligibility for relief under Penal Code section 1170.95?" (*Lewis*, S260598.)

We need not wade into this controversy here because Miller himself has asked us to take judicial notice of the record in his first appeal. That record of course includes the jury instructions and verdict forms.

Miller's jury found true the special circumstance of multiple murder. The trial court instructed the jury with— among many other instructions—CALCRIM Nos. 700, 702, 704, 705, and 721. CALCRIM No. 702 as given to the jurors here told them:

> "If you decide that a defendant is guilty of First Degree Murder but was not the actual killer, then, when you consider the Special Circumstance of More Than One Offense of Murder, you must also decide whether the defendant acted with intent to kill. [¶] . . . [¶] In order to prove this Special Circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove that the defendant acted with the intent to kill. [¶] If the defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he acted with the

9

intent to kill for the special circumstances of More Than One Offense of Murder to be true. If the People have not met this burden, you must find this Special Circumstance has not been proved true for that defendant."[4]

As the court here noted, in finding true the multiple murder special circumstance, the jury found Miller acted with the intent to kill. As we have said, SB 1437 by its express terms denies relief to a person who "was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree." (Stats. 2018, ch. 1015, § 3; § 189, subd. (e)(2).) Accordingly, Miller is ineligible for resentencing as a matter of law. (See *Verdugo*, *supra*, 44 Cal.App.5th at p. 336 [affirming summary denial of petition where jury found defendant had acted with express malice]; *People v. Roldan* (2020) 56 Cal.App.5th 997 [defendant failed to make requisite prima facie showing of eligibility when he

---

[4] The court also instructed the jury with CALCRIM Nos. 400 and 401, aiding and abetting. The court did not instruct the jury on the natural and probable consequences doctrine. In addition, the court gave CALCRIM Nos. 540A [felony murder: first degree —defendant allegedly committed fatal act (presumably applicable to Brown and McLeod)], 540B [felony murder: first degree— coparticipant allegedly committed fatal act], 548 [murder: alternative theories (malice aforethought and felony murder)], and 1600 [robbery]. Because the People did not allege a special circumstance of felony murder, the trial court correctly instructed the jury with CALCRIM No. 702 rather than No. 703. (See Bench Notes to CALCRIM No. 702 ["When the felony-murder special circumstance is charged, use CALCRIM No. 703, *Special Circumstance: Intent Requirement for Accomplice After June 5, 1990—Felony Murder*."].) As we noted in *Miller I*, Miller raised no claim of instructional error on appeal.

was convicted of second degree murder under actual implied malice theory], review granted Jan. 20, 2021, S266031; *People v. Swanson* (2020) 57 Cal.App.5th 604, 608, 613 [defendant convicted of first degree murder under provocative act doctrine ineligible for relief as a matter of law because that doctrine " 'requires proof that the defendant personally harbored the mental state of malice' "], review granted Feb. 17, 2021, S266262; *People v. Falcon* (2020) 57 Cal.App.5th 272, 274-277 [defendant failed to make prima facie showing of eligibility for relief where preliminary hearing transcript established defendant acted as direct aider and abettor to actual shooter], review granted Jan. 27, 2021, S266041.)

Finally, Miller contends the trial court also erred in not appointing counsel for him. This issue too is before our Supreme Court in *Lewis*: "When does the right to appointed counsel arise under Penal Code section 1170.95, subdivision (c)?" (*Lewis, supra*, S260598.) Some courts have held that, where the record of conviction demonstrates a petitioner is ineligible for relief as a matter of law, the court need not appoint counsel and may summarily deny the petition. (*Verdugo, supra*, 44 Cal.App.5th at pp. 323, 332-333, 336; *Lewis, supra*, 43 Cal.App.5th at pp. 1139-1140; but see *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted Nov. 10, 2020, S264684.)

We need not reach this issue because—in light of the jury instructions and the jury's verdict finding beyond a reasonable doubt that Miller acted with the intent to kill—any error in not appointing counsel for him is harmless in any event. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 670, 673, 676-678 [jury instructions demonstrated petitioner was ineligible for relief as a matter of law; thus, failure to appoint counsel for him was harmless under *People v. Watson* (1956) 46 Cal.2d 818], review granted Feb. 24, 2021, S266336.)

11

**DISPOSITION**

We affirm the superior court's order denying Herbert Charles Miller's petition to vacate his murder conviction and for resentencing under Penal Code section 1170.95.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EGERTON, J.

I concur:


ADAMS, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

LAVIN, J., Concurring and Dissenting:

A petition under Penal Code[1] section 1170.95 must allege the following: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)– (3).) The petition must also include the petitioner's declaration showing eligibility under all three enumerated conditions, as well as the superior court case number, year of conviction, and any request for appointment of counsel. (§ 1170.95, subd. (b)(1)(A); *People v. Ramirez* (2019) 41 Cal.App.5th 923, 929.)

Here, the petition did not include a declaration by Herbert Miller, the petitioner, that he was eligible for relief under section 1170.95. Instead, the petition included statements by Paul Cohen—who sought to be appointed as Miller's attorney— concerning Miller's purported eligibility for relief. Because the petition was missing required information, Miller did not make a prima facie showing of entitlement to relief and the trial court should have denied the petition without prejudice. (See § 1170.95, subd. (b)(2).) I would, therefore, modify the court's order to clarify that the denial of Miller's petition is without prejudice to the filing of another petition, and that the matter cannot be

---

[1] Undesignated statutory references are to the Penal Code.

considered without Miller's declaration. As so modified, I would affirm the order.


LAVIN, Acting P. J.